UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

_____
                                    )
In re:                              )    Chapter 11
                                    )
**SENECA BIOENERGY, LLC,**          )
                                    )    Bankruptcy Case No.
                        Debtor.     )    2-14-21470
                                    )
_____

## MOTION BY CREDITOR GENERATIONS BANK
## FOR CONVERSION OR DISMISSAL

**TO:    HON. PAUL R. WARREN**
**       UNITED STATES BANKRUPTCY JUDGE**

**GENERATIONS BANK**, formerly known as Seneca Falls Savings Bank (the "Bank" or "Generations"), as a creditor and party in interest, by its attorneys Boylan Code LLP and pursuant to the provisions of 11 U.S.C. §§105(a) and 1112(b), hereby moves this Court for an Order dismissing or converting the above-captioned bankruptcy proceeding (the "Bankruptcy") to a Chapter 7 liquidation (the "Motion"), or in the alternative to preclude the above-captioned Debtor's post-petition use of Generations' collateral, including cash collateral pursuant to 11 U.S.C. §§ 105(a), 361, 362 and 363, and in support thereof, states as follows:

### JURISDICTION, VENUE AND STANDING

1.   This Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(a), 157(b)(1) and 1334(b).

2.   Venue is proper pursuant to 28 U.S.C. §§ 1334 and 1409.

3.   The Motion is a core proceeding pursuant to 28 U.S.C. § 157.

4.   The proposed hearing on the Motion has been timely commenced as required by 11 U.S.C. § 1112(b)(3).

Generations has standing to bring the Motion pursuant to 11 U.S.C. § 1109.

## PARTIES AND BACKGROUND

5. On December 1, 2014, (the "Filing Date"), Debtor commenced the Bankruptcy by voluntarily filing a petition for relief under Chapter 11 of the Bankruptcy Code.

6. As of the Filing Date, Debtor was indebted to Bank in the amount of $457,806.65 (the "Indebtedness").

7. The Indebtedness is based on Debtor's default on a Commercial Term Note dated on or about September 11, 2013, whereby Debtor promised to repay Bank the principal sum of $66,000.00 (collectively the "Note").

8. The Indebtedness is also based on Debtor's default on an unequivocal and unconditional Guaranty of Payment dated on or about May 24, 2011 (the "Guaranty"), whereby Debtor guaranteed full and prompt payment, when due, whether accelerated or not, of any and all indebtedness, liabilities, and obligations of every nature and kind, of Finger Lakes Natural Oils, LLC ("FLNO") and Applied Reclamation Techniques, LLC ("ART") to Bank, whether arising before or after the Guaranty.

9. Despite due demand, Debtor has failed to make a payment to Generations on either the Note or Guaranty since December 24, 2013.

10. As of December 9, 2014, the Indebtedness included the following:

| | Account No. | Borrower | Balance | Last Payment | Missed Payments |
|---|---|---|---|---|---|
| a) | 60000763870 | FLNO | $215,854.08 | 11/14/13 | 05/01/13 to date |
| b) | 60000854680 | Debtor | $ 71,474.00 | 10/18/13 | 11/15/13 to date |
| c) | 60000763900 | FLNO | $106,591.16 | 12/24/13 | 12/01/13 to date |
| d) | 60000763880 | FLNO | $ 63,887.41 | 12/24/13 | 12/01/13 to date |
| | | Total balance: | $457,806.65 | | |

11. As partial security for the repayment of the Indebtedness, Debtor duly executed and delivered to Bank a Mortgage on its real property located at 500 Technology Farm Drive,

2

Geneva, New York 14456 (the "Real Property"). Generations duly recorded the Mortgage in the office of the Clerk of the County of Seneca on November 14, 2011, in Liber 1358 of Mortgages at Page 192. Generations is a valid second perfected mortgagee on the Real Property, subject only to the mortgage held by New York Business Development Corporation ("NYBDC"), fully enforceable in accordance with the terms of the underlying loan documents, without defense, offset or counterclaim of any nature.

12. As further security for the repayment of the Indebtedness, Debtor executed a Commercial Security Agreement dated November 9, 2011, thereby pledging to Bank all of the Debtor's existing and after acquired personal property, including all accounts, general intangibles, documents, chattel paper, instruments, equipment, tangible personal property, inventory, deposit accounts, and all proceeds and products thereof (the "Collateral"). Generations filed a UCC Financing Statement in New York State on November 10, 2011 and Seneca County on December 9, 2011, perfecting its security interest in the Collateral. Generations' interest in the Collateral is a valid first perfected security interest, fully enforceable in accordance with the terms of the underlying loan documents, without defense, offset or counterclaim of any nature.

13. Based on Debtor's Default and after failed attempts to cure, Generations filed an action in Supreme Court (Seneca County) on or about November 13, 2014 seeking a judgment and an order of replevin for the Collateral. As acknowledged in Debtor's Bankruptcy Schedules, the Supreme Court's hearing on Generation's replevin application was "to have been held during the week of December 1, 2014" – the week the Debtor filed for Bankruptcy relief.

14. Contemporaneously, NYBDC filed a foreclosure proceeding with the same Supreme Court with regard to the Debtor's Real Property. After failed attempts at forbearance, the Court issued a judgment of foreclosure in October 2014. As acknowledged in Debtor's

3

Bankruptcy Schedules, the Supreme Court ordered public auction of the Real Property "was to have been held during the week of December 1, 2014" – the week the Debtor filed for Bankruptcy relief.

### REQUEST FOR RELIEF

15. Pursuant to 11 U.S.C. § 1112(b), a bankruptcy court, upon request of a party in interest, shall dismiss or convert a Chapter 11 bankruptcy, whichever is in the best interest of the creditors, for "cause." Bankruptcy courts have broad discretion in deciding whether to dismiss a case for cause. See e.g., In re Ronald Kern & Sons, 2002 U.S. Dist. LEXIS 13884 (W.D.N.Y. 2002). "If 'cause' is established, and the Court does not find either specific unusual circumstances or the need for appointment of a Chapter 11 Trustee, the Court must convert or dismiss the Chapter 11 case." In re Spencerport Development, LLC, 2014 Bankr. LEXIS 4909, *5 (Bankr. W.D.N.Y. 2014)[1] (emphasis in original).

16. Section 1112(b) of the Bankruptcy Code includes a non-exclusive list of what may constitute "cause" for the conversion or dismissal of a Chapter 11 Bankruptcy. Generations respectfully contends cause for dismissal or conversion of the instant Bankruptcy exists under 11 U.S.C. §§ 1112(b)(4)(D), 1112(b)(4)(C), 1112(b)(4)(A) and Section 1112(b)'s inherent requirement of good faith.

### *11 U.S.C. § 1112(b)(4)(D)*

17. Congress specifically enumerated within Section 1112(b)(4)(D) of the Bankruptcy Code as a "cause" for dismissal or conversion the "unauthorized use of cash collateral [that is] substantially harmful to 1 or more creditors." This inclusion mirrors Congress' preclusion elsewhere in the Bankruptcy Code of a debtor-in-possession's use of cash collateral without

---

[1] BK No. 14-21154-PRW.

4

permission from: (a) the secured party; or (b) the court after notice and a hearing. See 11 U.S.C. §§ 363(c)(2)(A)&(B), and 1107. See also, In re SI Grand Traverse LLC, 250 B.R. 703, 705 (Bankr. W.D. Mich. 2011)("…Congress has expressed in the strongest terms the federal policy of protecting a secured creditor's interest in collateral generally, cash collateral more specifically…").

18. Generation's Collateral includes cash collateral as defined under section 363(a) of the Bankruptcy Code and the Debtor continues to use that cash collateral post-petition without the consent of either Generations or this Court.

19. In addition, 11 U.S.C. §§ 361, 362 and 363 require a debtor to provide adequate protection to secured creditors. Section 363(e) of the Bankruptcy Code states that "at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, without or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." See also, Metromedia Fiber Network Servs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.), 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary -- it states that the court "shall" grant the relief specified, at any time, on request of the secured entity"); 3-363 COLLIER ON BANKRUPTCY P. 363.05(2) (Matthew Bender & Co., Inc. 16th ed. 2014) ("The requirement of adequate protection in section 363(e) is mandatory. If adequate protection cannot be offered, such use, sale or lease of the collateral must be prohibited.").

20. It is the debtor that bears the burden of proof on the issue of adequate protection. See 11 U.S.C § 363(p) and Generations finds Debtor's unsupported $3,000,000 asset valuation

5

Case 2-14-21470-PRW, Doc 44, Filed 02/10/15, Entered 02/10/15 17:07:37, Description: Main Document, Page 5 of 14

completely without merit.[2] Regardless of whether the Debtor can meet this burden[3], it has inexcusably failed to make any post-petition payments to Bank. See In re Lord, 325 B.R. 12, 129 (S.D.N.Y. 2005) ("the fact that equity exists in the property does not relieve a debtor of the obligation to make contractual mortgage payments to a secured creditor"), citing In re Balco Equities, Ltd., 312 B.R. 734, 753 (Bankr. S.D.N.Y. 2004) (equity cushion does not provide adequate protection where debtor does not demonstrate a sincere desire to reorganize).

21.  The Debtor continues to use Generations' Collateral post-petition without the Bank's consent and without providing adequate protection.

22.  In light of these statutory requirements, Generations provided Debtor a draft Stipulation and Order Authorizing Debtor's Continued Use of Cash Collateral and Granting Adequate Protection (the "Cash Collateral Agreement") at or before its January 8, 2015 Meeting of Creditors. The Cash Collateral Agreement called for, among other things, replacement liens on Debtor's post-petition assets and adequate protection payments during the Bankruptcy. Despite the foregoing, Debtor has willfully refused to execute (or even respond) to the Cash Collateral Agreement. Debtor has also failed, in the alternative, to seek authorization for its use of Generation's collateral from this Court.

23.  Based on the Debtor's unauthorized and continued use of cash collateral, which is substantially harmful to Generations, Generations respectfully contends that cause exists to dismiss or convert the Bankruptcy. See Pena v. Manfredo, 2014 U.S. App. LEXIS 12965 (9th

---

[2] It should be noted that even if the Debtor were to meet his burden of demonstrating Generations is adequately protected, that does not allow for the Debtor's continued use of Generations' cash collateral without Generations' consent or Order of this Court. See In re The Visicon Shareholders Trust, 478 B.R. 292, 313-314 (Bankr. S.D. Ohio, W.D. 2012) (discussing at length the distinction between cash collateral and adequate protection requirements under the Bankruptcy Code).

[3] If the Debtor can demonstrate that Generations is secured by property the value of which is greater than the amount of its claim, Generations must be allowed interest on its claim along with any reasonable fees, costs, or charges pursuant to 11 U.S.C. § 506(b).

Cir. 2014) (affirming bankruptcy court's dismissal of Chapter 11 based on unauthorized use of cash collateral); In re Vision Shareholders Trust, 478 B.R. 292 (Bankr. S.D. Ohio, W.D. 2012). In the alternative, Generations' seeks an order precluding Debtor's use of Generations' Collateral, including its cash collateral pursuant to 11 U.S.C. §§ 105(a), 361, 362 and 363.

## *11 U.S.C. § 1112(b)(4)(C)*

24. Pursuant to 11 U.S.C. § 1112(b)(4)(C), "failure to maintain appropriate insurance that poses a risk to the estate or to the public" constitutes cause for dismissal. Like the prohibition against the unauthorized use of cash collateral, the Bankruptcy Code and United States Trustee have emphasized the bar placed upon debtors for operating post-petition without adequate insurance. See e.g., 11 U.S.C. § 1116(5) (specifically requiring a small business debtors maintain insurance customary and appropriate in the industry). See also, In re Campbell-Erskine Apothecary, Inc., 302 B.R. 169 (Bankr. W.D. Pa. 2003) (noting the failure to insure estate property constitutes cause for dismissal under 1112(b) and holding, "insuring estate property against loss or destruction is one of the fundamental aspects of this fiduciary duty [of a debtor-in-possession]").

25. Despite these requirements, the Debtor filed for bankruptcy relief (and continues operating post-petition) without insurance coverage of any kind. Based on the foregoing, Generations respectfully contends that cause exists pursuant to 11 U.S.C. § 1112(b)(4)(C) to dismiss or convert the Bankruptcy.

## *11 U.S.C. § 1112(b)(4)(A)*

26. Section 1112(b)(4)(A) of the Bankruptcy Code states that there is cause for dismissal when there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." "A negative cash flow is sufficient standing

7

Case 2-14-21470-PRW, Doc 44, Filed 02/10/15, Entered 02/10/15 17:07:37, Description: Main Document, Page 7 of 14

alone to establish continuing loss or diminution." In re East 81st, LLC, 2014 Bankr. LEXIS 1024, *19 (Bankr. S.D.N.Y. 2014). See also, Taub v. Adams, 2010 U.S. Dist. LEXIS 104805, *37 (E.D.N.Y. 2010) ("a debtor's negative post-petition cash flow and inability to pay current expenses establishes that the estate is suffering 'continuing losses'"). Rehabilitation "signifies that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met." In re AdBrite Corp., 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003).

27. In reviewing the Debtor's Schedules it is quickly apparent that the Debtor has been unable to meet even its necessary business expenses. For example, the following are included in Debtor's Schedule D:

| | |
|---|---|
| 2014 property taxes | $9,408.28 |
| 2014-2015 school taxes | $4,738.98 |
| 2011-2013 IRS payroll taxes | $47,143.47 |
| 2011-2013 NYS payroll taxes | $3,958.76 |

28. Given the Debtor's cash flow shortage, it is difficult to envision these 2015 tax obligations will be met post-petition, thus adding to the liens encumbering the Real Property. The Debtor includes both Ontario Insurance Co. and the Hartford as unsecured creditors due and owing $5,405.25 for property insurance, and it again, failed to budget for post-petition insurance of any kind. In addition, the Debtor's 2012 and 2013 tax returns show a combined negative net business income of -$472,163.00. See Bankruptcy Schedules SOFA, § 1.

29. Both pre- and post-petition the Debtor has also been unable to pay Generations or NYBDC on any of the notes to which it has pledged all of its real and personal property as collateral. See In re 347 Linden LLC, 2011 U.S. Dist. LEXIS 78843, *16 (E.D.N.Y. 2011) (finding a continuing loss and cause for dismissal in part due to the debtor's failure to make

8

mortgage payments from July 2009-December 2011 and failure to remain current on post-petition payments under the existing cash collateral order).

30. The Debtor's potential income post-petition seems to flow almost entirely from a single month to month tenant's $4,000 payment. The December 2014 operating report sets forth a total income of $5,000[4] and includes a projection of only $4,000 for January 2015. The Debtor's monthly insurance premium ($3,775)[5] alone will consume all but $225.00 of this income, leaving little if anything for taxes, debt service, adequate protection payments, utilities, wages or any other ordinary operating expenses.

31. The Debtor acknowledges in its Motion for DIP Financing (ECF Docket No. 28) that it cannot: (a) make insurance premium payments without financing from First Insurance Funding Corp. (including even the down payment of $11,003.98, which will be financed in part by the initial $10,000 advancement from Akron AG Products, Inc.); or (b) finance ongoing operations without the assistance of Akron AG Products, Inc. This required financing will only increase administrative claims, which must somehow be paid in full on the effective date of any confirmable plan of reorganization. See 11 U.S.C. § 1129(a)(9)(A).

32. While a chapter 11 bankruptcy alleviates certain pressures, "the bankruptcy code presumes…that a debtor-in-possession will generally satisfy its current obligations." In re Sheehan Memorial Hospital, 301 B.R. 777, 780 (Bankr. W.D.N.Y. 2003) (finding "cause" exists to convert or dismiss a chapter 11 bankruptcy based on the "debtor's persistent and substantial failure to pay its ongoing expenses of operation"). The Debtor here does not appear capable of breaking its historic inability to pay ongoing operational expenses.

---

[4] One would presume the additional $1,000 in income for December 2014 is payment for "services rendered to an affiliate" – Finger Lakes Natural Oil, LLC. Motion for DIP Financing, ¶ 7 and f.n. 2.

[5] Proposed in its DIP Financing Motion (ECF Docket No. 28).

9

33.     Moreover, outside of temporarily staying foreclosure and using whatever time is allowed by this Court for a white knight to ride in[6], it is not clear what the Debtor believes this Bankruptcy can accomplish. As recently reminded by this Court, "…liquidation of the Debtor's only asset would not lead to 'rehabilitation' of the Debtor's business as required by 11 U.S.C. § 1112(b)(4)(A)." In re Spencerport Development, LLC, 2014 Bankr. LEXIS 4909 at *3. The Debtor has offered no suggestion as to how it has any reasonable likelihood of rehabilitation. See In re 347 Linden LLC, 2011 U.S. Dist. LEXIS 78843, *16 (E.D.N.Y. 2011) (dismissing a Chapter 11 under section 1112(b)(4)(A), and finding "…there was no other prospect for increasing debtor' income, except, as debtor's principal conceded, by finding a treasure"). To paraphrase the proceeding Judge of the Western District, the Bankruptcy Court may act as a hospital in Chapter 11, but it cannot be a hospice.

34.     Based on the foregoing, Generations respectfully contends that cause exists pursuant to 11 U.S.C. § 1112(b)(4)(A) to dismiss or convert the Bankruptcy.

*Lack of Good Faith*

35.     In addition to granting relief for one of the reasons enumerated in section 1112(b)(4), a court may also dismiss a chapter 11 case for lack of good faith, as "the requirement of good faith has been held to be an implicit condition to the filing and maintenance of a bankruptcy case for over a century." 7-1112 COLLIER ON BANKRUPTCY P 1112.07. See also, Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.), 779 F.2d 1068, 1071 (5th Cir. 1986) ("every bankruptcy statute since 1898 has incorporated literally, or by

---

[6] Debtor writes in its DIP Financing Motion that "there is substantial interest by investors and prospective purchasers in continuing or acquiring the operations of the Debtor." ¶8. This hope in an undocumented white knight is undoubtedly the only "plan of reorganization" that Debtor can formulated. Among other things, it begs the question of why these potential investors or purchasers failed to come to fruition during the lengthy pendency of NYBDC's foreclosure proceeding or why NYBCD and Generations must wait still longer without payment of any kind.

10

Case 2-14-21470-PRW, Doc 44, Filed 02/10/15, Entered 02/10/15 17:07:37, Description: Main Document , Page 10 of 14

judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings"). The Second Circuit has summarized certain factors of bad faith as follows:

1) the debtor has only one asset;
2) the debtor has few unsecured creditors, whose claims are small in relation to those of the secured creditors;
3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
4) the debtor's financial condition is, in essence a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
6) the debtor has little or no cash flow;
7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and
8) the debtor has no employees.

See C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship), 113 F.3d 1304, 1311 (2d Cir. 1997). See also, In re 68 West 127 Street, LLC, 285 B.R. 838 (Bankr. S.D.N.Y. 2002).

36. Each of these factors applies to some degree for the instant Debtor.

37. *The debtor has only one asset*. With neither employees nor revenue other then rent, the Debtor appears to have only one asset - the Real Property and equipment inside. The only goods or services provided at the facility seem to be through Debtor's affiliates FLNO and ART. Based on the foregoing, it is worth inquiring whether Seneca BioEnergy, LLC is actually

11

a "single asset real estate" debtor as defined under 11 U.S.C. § 101(51B).[7] If so, Debtor is bound by the stay limitations provided under section 362(d)(3)[8] of the Bankruptcy Code.

38. *The debtor has few unsecured creditors, whose claims are small in relation to those of the secured creditors.* The vast majority of Seneca BioEnergy's debt is due and owing secured creditors Generations and NYBDC. As to the remaining unsecured creditors, the Debtor concedes "most of that [is] being held by members of the LLC." DIP Motion, ¶ 6. From the Debtor's amended Schedule F, it appears roughly 87% of the Debtor's unsecured debt is allegedly due individual members of the Debtor. The unsecured debt is therefore insignificant in what is a dispute between the Debtor and its mortgagees.

39. *The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt.* As set forth in the "Parties and Background" section above,

---

[7] "The term 'single asset real estate' means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto." 11 U.S.C. § 101(51B).

[8] "With respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—

(A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

(B) the debtor has commenced monthly payments that--

(i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2) [11 USCS § 363(c)(2)], be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

(ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate." 11 U.S.C. § 362(d)(3).

both the Real Property and Collateral therein are the subject of foreclosure and replevin proceedings filed by Generations and NYBDC based on the Debtor's default.

40. *The debtor's financial condition is, in essence a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action.* Despite the existing forum in Supreme Court (Seneca County), the Debtor has chosen the Bankruptcy Court as its new venue to attempt to resolve its only dispute - that with its mortgagees NYBDC and Generations.

41. *The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.* The Debtor fully concedes that the Bankruptcy was filed "in order to prevent the then immanent foreclosure sale of its assets," scheduled for that week. DIP Motion, ¶ 1.

42. *The debtor has little or no cash flow; The debtor can't meet current expenses including the payment of personal property and real estate taxes.* These issues have been addressed at length under the topic of 11 U.S.C. §1112(b)(4)(A) above.

43. *The debtor has no employees.* While the Debtor incurred payroll tax debt totaling $51,102.23 between 2011 and 2013, the Debtor includes no payroll expenses in its first operating report (nor any other expenses for that matter). It also failed to file a first day motion to pay prepetition wages. As such, it seems the Debtor is currently without employees.

44. Applying these bad faith factors to the instant facts demonstrates cause exists to dismiss or convert the Bankruptcy. The Debtor is not viable, filed the Bankruptcy merely to stall the pending foreclosure, and has no legitimate means of rehabilitation. See In re Asbridge, 61 B.R. 97, 102 (Bankr. D. N.D. 1986) ("a lack of good faith exists where at the outset, the debtor is not a viable economic entity and it is obvious that the petition was filed for the sole purpose of

13

frustrating and delaying legitimate efforts of secured creditors to enforce their rights"). In a set of facts similar to the ones here, the Debtor in Southern Communities, Inc. held an asset that was already involved in a foreclosure action, and the company was not economically sustainable as it never generated sufficient cash flow to service its mortgages or sustain operating expenses. 57 B.R. 215 (Bankr. M.D. Fla. 1986). The Court dismissed the bankruptcy for cause, and concluded that "one need not engage postulating to conclude that by some magic all of a sudden this frog will turn into a prince and will be ready to proceed toward a fruitful economic life." Southern Communities, Inc., 57 B.R. at 218. See also, In re C-TC 9th Ave. P'ship, 113 F.3d at 1310 (2d Cir. 1997) ("The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. "If there is not a potentially business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its raison d'etre . . . ."), quoting In re Winshall Settlor's Trust, 758 F.2d 1136, 1137 (6th Cir. 1985).

**WHEREFORE**, Generations Bank respectfully requests that this Court issue an Order dismissing or converting the Bankruptcy pursuant to 11 U.S.C. §§105(a) and 1112(b), or in the alternative to preclude the above-captioned debtor's post-petition use of its collateral, including cash collateral pursuant to 11 U.S.C. §§ 105(a), 361, 362 and 363, and grant such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| February 10, 2015<br>Rochester, New York | **BOYLAN CODE LLP**<br>*Attorneys for Generations Bank*<br><br>_____<br>Devin Lawton Palmer<br>The Culver Road Armory<br>145 Culver Road, Suite 100<br>Rochester, New York 14620<br>Telephone: 585.232.5300<br>Facsimile: 585.238.9012 |